UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY STROBEL,

    Plaintiff,

vs.                                                    Case No. 11-11684

ANDY DILLON, State Treasurer in his          HON. AVERN COHN
official capacity as Treasurer of the
State of Michigan, BILL SCHUETTE, in
his official capacity as Attorney General
for the State of Michigan,

    Defendants.

_____/

## MEMORANDUM AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
## (Doc. 13)[1]

### I. Introduction

This is a case filed under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. Plaintiff Stanley Strobel is a state inmate currently incarcerated at the West Shoreline Correctional Facility in Muskegon Heights, Michigan. Plaintiff is also a former employee of General Motors Corporation (GM). Plaintiff retired from GM with a monthly pension benefit in the amount of $3,160.00[2] which he receives from Fidelity. As will be explained, the State Treasurer, a defendant in this case, brought an action against plaintiff in state court under the State Correctional Facility

---

[1] The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2] There is a discrepancy in the record as to the amount of the pension benefit. Plaintiff's complaint states a monthly amount of $3,160.00. A document filed by the State Treasurer in state court states a monthly amount of $2,835.37.

Reimbursement Act, (SCFRA), M.C.L. § 800.401, to recover the costs of his incarceration which involved freezing his assets, including his pension benefit. While the state court case was pending, on the day before a final judgment entered, plaintiff filed suit in federal court, essentially claiming that the state's attempt to recoup the costs of incarceration via his pension violates ERISA. Plaintiff names as defendants Andy Dillon, in his official capacity as State Treasurer, and Bill Schuette, Attorney General for the State of Michigan, also in his official capacity. The two count complaint claims an ERISA violation under count one and seeks injunctive relief based on ERISA under count two.

As will also be explained, this is not the first attempt to challenge the SCFRA as violative of ERISA. Both the Michigan Supreme Court and the Michigan Court of Appeals have spoken on the issue, with only the Michigan Supreme Court speaking more squarely to the situation in this case.

Before the Court is defendants' motion to dismiss or for summary judgment. Defendants cite the Eleventh Amendment, the doctrine under Ex parte Young,[3] the Rooker-Feldman doctrine,[4] and res judicata in support of dismissal. In the end, the Rooker-Feldman and res judicata arguments carry the day for defendants, making it unnecessary to consider defendants' other grounds for dismissal.

## II. Background

In May 2010, plaintiff was sentenced to two to fifteen years incarceration

---

[3] Ex parte Young, 209 U.S. 123 (1908).

[4] Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

following a conviction for involuntary manslaughter. In late 2010, the State Treasurer, brought an action under SCFRA in Gladwin County Circuit Court seeking an ex parte order to freeze plaintiff's assets, including the bank account where plaintiff's pension check was being deposited, and to appoint a receiver. On November 5, 2010, the state court entered a show cause order, giving plaintiff until January 25, 2011 to show cause "why an order should not be entered appropriating and applying [plaintiff's] assets to reimburse the State of Michigan for the cost of his confinement in a state correctional facility . . . and . . . show cause why he should not be ordered to notify General Motors Corporation of his current legal address at the State correctional facility where he is confined for purposes of receiving pension benefits." The show cause order also stated that

> . . . If [plaintiff] objects to the State's request for an order indicating his legal address for purposes of receiving funds for deposit into his only legal bank account, or to the State's claim to 90% of his assets, then before the scheduled hearing date he shall provide this Court and the Attorney General's office with a written response explaining te reasons for the objection.

The show cause hearing was adjourned several times, including one adjournment so plaintiff could retain new counsel.

According to defendants, plaintiff's new (and current) counsel asked the State Treasurer to agree to remove the case to federal count to allow for review of whether the pension benefits are protected from reach under ERISA. The State Treasurer declined the request. A show cause hearing was eventually set for April 19, 2011.

On April 18, 2011, the day before the show cause hearing, plaintiff filed a complaint in federal court, claiming that the State's attempt to reach his pension benefits under SCFRA violates ERISA.

Although the show cause order directed plaintiff to file a written response <u>before</u> the hearing, plaintiff filed a written answer on the date of the hearing, April 19, 2011, denying that the State was entitled to his pension benefits under ERISA. In the answer, plaintiff also explained the filing of the federal complaint, as follows:

> . . . [plaintiff] has sought to have this matter litigated in the United States District Court for the Eastern District of Michigan and have filed suit, entitled <u>Strobel v. Dillon</u>, et al., being case number 2:11-cv-11684. This suit has been commenced prior to any order(s) being entered in this case to prevent application of <u>Rooker-Feldman</u> doctrine.

On April 19, 2011, the state court issued a Final Order, stating in relevant part that:

> During the period of his incarceration [plaintiff's] legal address is the Michigan correctional facility in which he is currently confined, currently the West Shoreline Correctional Facility.
> Within one week of being served with a copy of this Order, [plaintiff] is ordered to notify Fidelity that all pension benefits shall be mailed by check made payable to him at he West Shoreline Correctional Facility, and within one week of any transfer to a different facility, he shall notify Fidelity of his new prison address.

The Final Order further provided that if plaintiff refused to comply with the notification provision and directs that his pension payments be paid to his power of attorney, the power of attorney is required to direct payment in the amount of 90% of the pension payment to the correctional facility and 10% to plaintiff. The Final Order does not direct GM to take any action whatsoever with regard to plaintiff's pension payment; GM was not a party to the state court action.

Under Michigan's court rules, the state court's Final Order became effective on May 10, 2011, 21 days after its entry. <u>See</u> M.C.R. 2.614(A)(1). Plaintiff's right to appeal the Final Order expired on that same date. See M.C.R. 7.101(B)(1)(a). Plaintiff did not

appeal the Final Order.

Although plaintiff disclosed the filing of the federal complaint in his response to the show cause order, he did not serve defendant with the complaint until July 6, 2011, almost three months after entry of the Final Order.

### III.  Legal Standards

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." DLX, Inc. v. Ky., 381 F.3d 511, 516 (6th Cir.2004).  A district court has no subject matter jurisdiction over a claim if that claim is barred by the Rooker-Feldman doctrine, res judicata, or by the Eleventh Amendment.  Id.

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 545 (2007).  See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir.2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949 (internal quotation marks and citation omitted).

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

**IV. Analysis**

## A. SCFRA and Relevant Case Law

Before considering defendants' arguments, some limited discussion of SCFRA and relevant case law is appropriate. As an initial matter, Michigan Department of Corrections security restrictions allow an inmate to have only one bank account—a prison account—during incarceration, and they require that an inmate receive all funds and conduct all financial transactions through the prison account. See Mich. Dep't of Corrs. Policy Directive No. 04.02.105 (2004).

Michigan enacted SCFRA to reimburse the State for the costs of detaining and providing for a prisoner. Under SCFRA, the attorney general may seek reimbursement for expenses incurred during a prisoner's incarceration by filing a complaint against the prisoner in the state trial court. M.C.L. Laws § 800.404(1). Under § 800.404(3), the state court may order any person, corporation, or entity having custody of a prisoner's assets to "appropriate and apply the assets or a portion thereof toward reimbursing the state." However, this provision of SCFRA is not applicable where, as here, a prisoner's assets are held by a private pension plan. The State recognizes that application of § 800.404(3) in this situation would violate ERISA's anti-alienation provision, which states that each plan must "provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Instead, in order to recover a prisoner's benefits payable by a pension plan, the State utilizes SCFRA in conjunction with other Michigan laws and MDOC prison directives.

The process begins, as it did here, with the State Treasurer, who files a complaint in state court and obtains a judgment against the prisoner, which includes a directive that the prisoner to inform his or her pension plan that any benefit payments

should be sent to the institutional address. If the prisoner does not comply, the warden of the institution must send a copy of the court order to the pension plan. The order serves to notify the pension plan of the prisoner's institutional address. Once payments are received at the prison, they are automatically deposited into the prisoner's institutional account and are then confiscated by the state.

The Michigan Supreme Court and the Sixth Circuit have considered the application of SCFRA and the anti-alienation provision of ERISA in decisions which, are not necessarily conflicting but not harmonious. First, in State Treasurer v. Abbott, 468 Mich. 143, (2003), cert. denied, 540 U.S. 1112 (2004), the Michigan Supreme Court addressed the interplay of SCFRA and ERISA in the context of a dispute between the State Treasurer and an inmate involving a state court order that directed the inmate to instruct his pension plan to send his pension benefits to his prison address, and that further directed the warden then to divide the funds among the inmate, the inmate's wife and the State. Id. at 716–717. That order is very similar to the Final Order in this case. The Michigan Supreme Court also held that, if the inmate refused to instruct the pension plan to send the proceeds to his prison address, the pension plan was nonetheless required to do so. Id. at 717. As noted above, the Final Order in this case contains no directive to the pension plan.

As to whether the state court's order directing the inmate to instruct the pension plan to send his benefit payments to his prison address violated the anti-alienation provision, the Michigan Supreme Court concluded that no violation occurred. The Michigan Supreme Court observed that the pertinent Treasury Regulation, 26 C.F.R. § 1.401(a)–13(c)(1), defined an alienation as an arrangement that contemplates the

transfer of an interest in plan benefits to a person other than the beneficiary. Id. at 718. Yet, the Michigan Supreme Court held that ordering an inmate to direct a plan to send his benefit payments to his prison address did not transfer an interest in the benefit payment to another person. Id. at 718–719. The Michigan Supreme Court further stated that the state court's order in the alternative, requiring the plan to send the payments to the inmate's prison address if the inmate refused to notify the plan to do so, did not violate the anti-alienation provision for the same reason. Id. at 720 ("Because [the prisoner] ... receives the funds, no assignment or alienation occurs.").

     After the decision in Abbott, the Sixth Circuit considered the interplay of SCFRA and ERISA in DaimlerChrysler v. Cox, 447 F.3d 967 (6th Cir. 2006), cert. denied, 551 U.S. 1130 (2007). In this case, the State Treasurer sought to recover pension benefit payments that four inmates were receiving under the DaimlerChrysler Corporation–UAW Pension Agreement (the "Plan"). DaimlerChrysler, 447 F.3d at 969. The State Treasurer obtained a judgment under SCFRA in state court, awarding the State a percentage of each inmate's pension payments. Accordingly, to effectuate the SCFRA award, the state court ordered each inmate to inform the Plan that benefit payments should be sent to his institutional address. Each order further provided that, if the inmate refused to give such notice, the warden was to serve on DaimlerChrysler Corporation a copy of the court's order and a notice that the institutional address was the legal address where the inmate should receive his pension benefits. Id. at 970. Each order directed the warden to make distributions to the State from the inmate's account in an amount equal to the court-ordered percentage of the inmates' pension benefits. The state court further ordered that, when payments from the pension plan

9

were received at the institutional address, they were to be deposited directly into the inmate's institutional account, from which the warden was to make monthly distributions to the State of 90% of the funds.

Only one of the inmates complied with the order to notify the Plan that benefits should be sent to his institutional address, and DaimlerChrysler changed his address accordingly. The other three inmates refused to provide notice to the Plan of their institutional address, and their respective wardens sent change of address notices to DaimlerChrysler as the state court had ordered.

DaimlerChrysler did not comply with the notices, but instead brought a declaratory judgment action in this district, seeking a determination that (1) state officials are precluded from enforcing the orders against the prisoners to the extent that they contravene ERISA or the Pension Plan, and (2) the orders, requests for reimbursement, and the notices issued pursuant to SCFRA are void to the extent that they compel the prisoner, or require the warden, to direct DaimlerChrysler to make payments to an account that is not voluntarily designated by the prisoner. The district court granted DaimlerChrysler's request for a declaratory judgment, holding that the orders and notices violated ERISA's anti-alienation provision to the extent that they purported to require DaimlerChrysler to direct pension benefits to a place not designated by the inmate. The district court, however, rejected DaimlerChrysler's contention that the state court orders and notices were also preempted by ERISA's general preemption provision, 29 U.S.C. § 1144(a). DaimlerChrysler appealed.

The Sixth Circuit affirmed the district court's findings.[5] The Sixth Circuit observed that Treasury Regulation § 1.401(a)–13(c)(1) (26 C.F.R.) "define[s] the terms 'assignment' and 'alienation' [in ERISA's anti-alienation provision] as including '[a]ny direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary.' " Id. at 973; see Reorg. Plan No. 4 of 1978, 3 C.F.R. § 332 (1979) (Secretary of Treasury has authority to issue regulations under ERISA's anti-alienation provision). The Sixth Circuit further observed that it, along with a majority of the other circuits, had held that once benefit payments have been disbursed to a beneficiary, creditors may encumber the proceeds, but that ERISA protects pension plan benefits from alienation up to the point of payment to the beneficiary. Id. at 974. The Sixth Circuit framed the issue as whether the wardens' notices encumbered the benefit payments before the payments left plan control.

The Sixth Circuit concluded that "the SCFRA notices operate on plan benefits before they are sent," thus falling within ERISA's prohibition on alienation. Id. Accordingly, the court of appeals concluded that the notices were "void to the extent that they direct DaimlerChysler to send benefits to an address not designated by a beneficiary." Id. at 975. Further, the Sixth Circuit said that the State could still reach

---

[5]On appeal, DaimlerChrysler originally sought to void the state court orders with respect to all four inmates. However, it later argued only that the orders and notices were void to the extent that they purported to require the warden to direct funds to the prison accounts without the inmates' cooperation. Accordingly, the issue of whether a prohibited alienation occurs when a court orders an address change and the inmate cooperates in directing the plan to change his address was not addressed on appeal.

11

benefit payments but must wait until the payments are received at the direction of the inmate before encumbering them. Id. at 974 (citations omitted).

The Sixth Circuit acknowledged the Michigan Supreme Court's decision in Abbott, but found its reasoning "unpersuasive." Id. at 976. However, the court of appeals specifically did not decide whether ERISA's anti-alienation provision would be violated if Michigan sought to require an inmate to send an address change to his pension plan, precise issue addressed in Abbott. The Sixth Circuit stated:

> We are not passing, however, on the question of whether state officials can compel prisoners to send their address changes to the Pension Plan because that issue is not before us.[6]

Id.

Meanwhile, before the Sixth Circuit decided DaimlerChrysler, Thomas Abbott, who was a plaintiff in the state court Abbott case discussed above, along with other prisoners, filed a complaint in federal court, contending that the state converted their pension assets in violation of ERISA, due process, and state law. Abbott v. Michigan, 05-72793 (E.D. Mich. 2005). The district court dismissed the case on grounds of Rooker-Feldman and res judicata, noting that plaintiffs had the ability to challenge the state court orders in state court. See Abbott v. Michigan, 2006 WL 250255 (E.D. Mich. Jan. 31, 2006). Plaintiffs appealed.

On appeal, the Sixth Circuit affirmed the district court's dismissal, holding that the prisoner's claims were barred by either Rooker-Feldman or res judicata. Abbott v.

---

[6]Plaintiff argues that there is a question of fact as to the holding in DaimlerChrysler as it relates to the issue in this case. Putting aside that the scope of a holding is a question of law, not fact, the Sixth Circuit quite plainly stated it was not addressing the issue of whether an inmate can be compelled to change their address for purposes of directing a pension benefit–the precise issue in this case.

Michigan, 474 F.3d 324 (6th Cir. 2007). In so doing, the Sixth Circuit noted that its decision in DaimlerChrysler was "in tension with" the Michigan Supreme Court's decision in Abbott. Id. at 327 n. 3.

Against this backdrop, the Court will consider defendants' motion.

### B. Rooker-Feldman

While defendants raise several grounds for dismissal, based on the above discussion, it seems appropriate to first consider whether Rooker-Feldman and/or res judicata apply. "[T]he threshold question in every federal case," is whether the court has the power to entertain the suit. Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Rooker-Feldman doctrine divests all federal district courts of subject matter jurisdiction to review state court judgments. See generally Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the United States Supreme Court is the exclusive federal court with jurisdiction to review state court decisions. Accordingly, the doctrine prevents district courts from entertaining challenges to state court decisions, "even if those challenges allege that the state court's action was unconstitutional." Feldman, 460 U.S. at 486. The Rooker–Feldman doctrine holds that federal district courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). "[T]he pertinent inquiry ... is whether the 'source of the injury' upon which plaintiff bases his federal claim is the state court judgment."

13

Lawrence v. Welch, 531 F.3d 364, 368 (6th Cir. 2008) (quoting McCormick v. Braverman, 451 F.3d 382, 394–95 (6th Cir. 2006)). "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." McCormick, 451 F.3d at 393. The Rooker-Feldman doctrine prohibits both direct attacks on the substance of the state court decision, and a challenge to the procedures used by the state court in arriving at its decision. Anderson v. Charter Township of Ypsilanti, 266 F.3d 487, 493 (6th Cir. 2001).

Plaintiff argues that the Rooker-Feldman doctrine does not apply because he filed this lawsuit before the entry of any state court order. Indeed, plaintiff explained to the state court in responding to the show cause order that this federal lawsuit was filed at a time to prevent the application of the doctrine. The Court is not convinced that plaintiff's creative timing, by one day, saves his case. Plainly, this lawsuit invites review of the state court's Final Order. Plaintiff's requested relief is to have this court undo the state court's Final Order regarding pension payments. Plaintiff also knew the outcome of the state court's decision before the Final Order was entered, as the state court was clearly bound by the Michigan Supreme Court's decision in Abbott which permits the State Treasurer to take the action it did and which was found not to violate ERISA. The filing of the complaint in federal court is merely an attempt to avoid, and void, the state court's Final Order. Rooker-Feldman does not allow for this Court to overturn the Final Order. While plaintiff contends otherwise, the injury of which he complains is clearly the Final Order. There is no other source of his injury. Indeed, as explained in defendants' papers, the defendants can only reach a plaintiff's pension benefit through a state court order issued after bringing an action under SCFRA. As the Sixth Circuit explained in

14

Abbott:

> the plaintiffs are ostensibly complaining of injuries caused by the actions of third parties-the conversion of their pension benefits by state officials-but those actions were the direct and immediate products of the state-court SCFRA judgments. The plaintiffs' claims and arguments make this clear: They assert that the state courts erred in issuing the SCFRA judgments and do not claim that the defendants have injured them in any way except by strictly executing those judgments. Accordingly, the plaintiffs' claims of specific injuries that they have suffered are actually challenges to the state-court SCFRA judgments and are barred by the Rooker-Feldman doctrine.

Abbott, 474 F.3d at 329.

Plaintiff also argues that Rooker-Feldman does not apply because he did not have a reasonable opportunity to raise his claims in state court, citing Wood v. Orange County, 715 F.2d 1543, 1547 (11th Cir. 1983) (stating that the doctrine applies "only to issues that the plaintiff had a reasonable opportunity to raise"), cert. denied, 467 U.S. 1210, 104 S.Ct. 2398, 81 L.Ed.2d 355 (1984). Plaintiff says he was denied a reasonable opportunity to litigate his ERISA claims during the SCFRA proceedings because their assets were frozen and their incarceration made it difficult to travel, hire counsel, or otherwise prepare a defense.

The Sixth Circuit addressed this same argument in Abbott and rejected the notion that the state court proceeding did not allow an opportunity to raise an ERISA claim. The Sixth Circuit explained:

> We believe that the Supreme Court's recent decisions do not support the plaintiffs' asserted "reasonable opportunity" exception to the Rooker-Feldman doctrine. Such an exception has been applied by various courts of appeals at one time or another, see, e.g., Long v. Shorebank Dev. Corp., 182 F.3d 548, 559-60 (7th Cir.1999); Whiteford v. Reed, 155 F.3d 671, 674 (3d Cir.1998); Robinson v. Ariyoshi, 753 F.2d 1468, 1472-73 (9th Cir.1985), vacated on other grounds, 477 U.S. 902, 106 S.Ct. 3269, 91 L.Ed.2d 560 (1986); Wood, 715 F.2d at 1547-48, including this one, see Johns v. Bonnyman, 109 Fed.Appx. 19, 21

> (6th Cir. 2004) (unpublished order). However, these cases were decided during a period of time in which "many circuits, including this one, gave an expansive definition" of the scope of the doctrine. McCormick, 451 F.3d at 391.
>
> More recently, the Supreme Court has emphasized the doctrine's narrow reach: "The Rooker-Feldman doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp., 544 U.S. at 284, 125 S.Ct. 1517. Thus, in the limited circumstances in which a plaintiff complains of an injury directly caused by a state-court judgment, if the plaintiff believes that the trial court did not give him or her a reasonable opportunity to pursue a claim, the proper course of action is to appeal the judgment through the state-court system and then to seek review by writ of certiorari from the U.S. Supreme Court. Cf. Postma v. First Fed. Sav. & Loan of Sioux City, 74 F.3d 160, 162 n. 3 (8th Cir. 1996) (collecting cases and concluding that "there is no procedural due process exception to the Rooker-Feldman doctrine"). However, if the plaintiff has a claim that is in any way independent of the state-court judgment, the Rooker-Feldman doctrine will not bar a federal court from exercising jurisdiction.
>
> The plaintiffs' claims of particular injuries that they have suffered arise as a direct result of prior state-court judgments. Accordingly, the Rooker-Feldman doctrine prevents lower federal courts from exercising jurisdiction over their challenges to SCFRA seeking to overturn the state-court judgments. As explained above, however, the Rooker-Feldman doctrine does not prevent lower federal courts from exercising jurisdiction over their general challenge to the validity of SCFRA.

Abbott v. Michigan, 474 F.3d 324, 330 (footnotes omitted).

Here, like the plaintiffs in the federal case of Abbott, the actions of defendants are grounded in SCFRA, the Michigan Supreme Court's decision in Abbott, and the Final Order. To grant the relief plaintiff seeks is impossible without having to decide that the Final Order is violative of ERISA. Rooker-Feldman prevents the Court from having jurisdiction to make such a decision. Rather, the United States Supreme Court is the only federal court with jurisdiction to review state court judgments. Notably, the Supreme Court has denied certiorari from both the Michigan Supreme Court's decision in Abbott and the Sixth Circuit's decision in DaimlerChrysler.

16

### C. Res Judicata

Additionally, even if Rooker-Feldman did not apply, the doctrine of res judicata bars plaintiff's case. Res judicata may bar any claims over which the federal courts have jurisdiction, including both claims of injuries caused by state-court judgments and general challenges to state statutes. Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state. 28 U.S.C. § 1738. Michigan recognizes two preclusion doctrines: res judicata, or claim preclusion; and collateral estoppel, or issue preclusion. Claim preclusion "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." Adair v. State, 470 Mich. 105, 680 N.W.2d 386, 396 (Mich. 2004). Claim preclusion "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." Id. "[T]he burden of proving the applicability of the doctrine of res judicata is on the party asserting it." Baraga County v. State Tax Comm'n, 466 Mich. 264, 645 N.W.2d 13, 16 (Mich. 2002).

The Supreme Court has held, however, that as a matter of federal law, "res judicata principles do not apply 'where the party against whom an earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.' " Fellowship of Christ Church v. Thorburn, 758 F.2d 1140, 1144 (6th Cir.1985) (quoting Allen v. McCurry, 449 U.S. 90, 95 (1980)). As a constitutional minimum, the state-court proceedings must "satisfy the applicable requirements of the Due Process Clause" in order for their decisions to warrant preclusive effect. Kremer v.

Chem. Const. Corp., 456 U.S. 461, 482 (1982). Due process generally requires "notice and an opportunity to respond." Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 546 (1985).

The Sixth Circuit in Abbott already considered whether res judicata applies to the circumstances of this case, explaining:

> This case satisfies all three prongs of the Michigan Supreme Court's test to determine claim preclusion: the prior state-court decisions at issue were decided on the merits and involved the same parties, and any due process, ERISA, or state-law arguments were or could have been resolved in those actions. The plaintiffs generally asserted in the federal district court that the SCFRA actions did not satisfy due process requirements because of the litigation difficulties that the plaintiffs faced due to their incarceration and the freezing of their assets. However, the defendants moved for summary judgment on this issue. Under the familiar standard, summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). The defendants submitted to the district court copies of the state-court orders and cited the applicable statutory provisions. Because the orders themselves and the statutory provisions by which SCFRA proceedings are governed show that SCFRA proceedings generally provide prisoners a full and fair opportunity to litigate any of their claims, the plaintiffs were required to come forth with evidence that they did not have a full and fair opportunity to litigate their claims in their particular cases. They provided none, instead relying on unsupported assertions in their brief, and thus summary judgment for the defendants was proper.

Abbott, 474 F.3d at 331-32.

Plaintiff provides no reasoned argument as to why the same result should not obtain here. Indeed, as in Abbott, all four requirements for res judicata are met: 1) the state SCFRA proceedings were decided on the merits; 2) the resultant SCFRA order was a final decision; 3) plaintiff's ERISA claim was capable of resolution in the state

proceedings;[7] and 4) both actions involved the same parties. Plaintiff's ERISA claim arises from the same transaction, facts, and evidence in the state court proceedings, because it is based on the Final Order which essentially requires plaintiff to redirect his pension benefit check to his prison address. Because the test is whether the claims raised in subsequent litigation could have been resolved in the first suit, plaintiff's claim is barred. Plaintiff could have raised an ERISA claim, as well as any other challenges to the constitutionality of the state law, during the SCFRA proceedings.

### V. Conclusion

Because, as explained above, plaintiff's ERISA claim is precluded by the Rooker-Feldman doctrine and res judicata, the remaining grounds for dismissal raised by defendants need not be addressed.

Accordingly, defendants' motion is GRANTED. This case is DISMISSED.

SO ORDERED.

Dated: November 14, 2011        S/Avern Cohn
                                AVERN COHN
                                UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 14, 2011, by electronic and/or ordinary mail.

                                S/Julie Owens
                                Case Manager, (313) 234-5160

---

[7] See Walters v. Cox, 342 F. Supp. 2d 670, 671 (E.D. Mich. 2004) (noting that state courts have jurisdiction to decide issues under ERISA, even if ERISA is raised as a defense). Moreover, it is clear that plaintiff could not have removed the state court action to federal court by asserting ERISA as a defense. See State Treasurer v. Pennington, 2011 WL 3440761, *2 (E.D. Mich. Aug. 5, 2011) (stating that "the SCFRA calim brought by the State Treasurer arises solely under state law and [the plaintiff's] asserted defenses cannot turn this case into one arising under federal law").